# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KYLE ROGERS,

     Plaintiff,

          v.

CITY OF WILKES-BARRE, *et al*.,

     Defendants.

NO. 3:18-CV-0039

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss and to Strike Impertinent Matter (Doc. 5) filed by Defendants City of Wilkes-Barre, Anthony George, Marcella Lendacky, and Ralph Elick. Plaintiff Kyle Rogers asserts a variety of federal and state law claims related to his termination from employment as an officer with the Wilkes-Barre City Police Department. Defendants have moved to dismiss all claims. Because Rogers fails to state a claim under federal law and there exists no affirmative justification for exercising supplemental jurisdiction over the remaining state law claims, Defendants' motion to dismiss will be granted in part, the federal law claims will be dismissed with prejudice, and the state law claims will be dismissed without prejudice.

## I. Background

The relevant facts alleged in the Complaint are as follows:

Plaintiff Kyle Rogers ("Rogers" or "Plaintiff") was hired by Defendant City of Wilkes-Barre (the "City") as a full-time patrolman on February 6, 2014. (*See* Compl., ¶ 170). After completing the field training program, Rogers was assigned to Platoon B under the supervision of Lieutenant Oshefski for ten (10) months. (*See id*. at ¶ 174). Rogers did not have any disciplinary write-ups during this time. (*See id*. at ¶ 175).

In January 2015, Rogers was reassigned to Platoon A under the supervision of Defendant and then-Liuetenant Marcella Lendacky ("Lendacky"). (*See id*. at ¶ 177).

Shortly after his assignment to Platoon A, Rogers began to have problems with Lendacky's management techniques. (*See id*. at ¶¶ 179-183). Rogers sought advice on handling the situation from his union, but Lendacky learned of this and became enraged. (*See id*. at ¶¶ 184-186).

Approximately one (1) week later, Rogers received his first disciplinary complaint based on a verbal argument he admits occurred with Lendacky. (*See id*. at ¶¶ 188-190). After this disciplinary action, Rogers requested a transfer, but that request was denied by former-Chief of Police Hughes ("Hughes") for lack of seniority. (*See id*. at ¶¶ 194-195).

On April 5, 2015, Rogers submitted a Code of Conduct grievance against Lendacky to his then-union president Sergeant Phil Myers ("Myers"). (*See id*. at ¶¶ 196-197). The "grievance was not processed at that time." (*Id*. at ¶ 199).

In mid-June 2015, Hughes granted Rogers' request for a transfer to Platoon B. (*See id*. at ¶ 200). Also around this time Rogers was disciplined for a second time. (*See id*. at ¶¶ 201, 268). Specifically, Rogers admitted that he violated City policy by missing three hearings. (*See id*. at ¶ 202). For this Rogers received a written reprimand signed by Hughes. (*See id*. at Ex. "4").

Rogers was disciplined for a third time in October 2015 after he fell asleep on the job. (*See id*. at ¶ 203). This disciplinary charged was filed by his Platoon B supervisor Defendant Lieutenant Ralph Elick ("Elick"). (*See id*. at ¶ 204). Rogers did not contest this charge. (*See id*. at ¶ 205).

On December 15, 2015, an incident occurred in the "bidding room" at the Police Department building. (*See id*. at ¶ 209). Rogers and two (2) off-duty officers were there for union seniority based shift bidding for the upcoming 2016 year. (*See id*. at ¶ 210). Those officers joked that due to Rogers' lack of seniority he was going to be reassigned back to Lendacky's platoon. (*See id*. at ¶ 211). "[S]tressed out about the thought of having to go back to Platoon A," (*id*. at ¶ 8(q)), Rogers "drew his department issued firearm from his holster and raised it." (*Id*. at Ex. "5"). The firearm

was fully loaded. (*See id*. at Ex. "6"). Rogers then re-holstered his firearm, laughed, stated to his colleagues that he was not pointing the firearm at them, and exited the room. (*See id*. at Exs. "5"-"6").

The following day, Hughes ordered Elick to perform an investigation of the previous day's incident. (*See id*. at ¶ 216). As part of that investigation, Elick requested the other officers in the bidding room with Rogers, Mark Hilpp and Joe Homza, prepare written accounts of the incident. (*See id*. at Ex. "7"). Elick concluded that Rogers committed three (3) intentional violations:

> Section 1.11 - Repeated violations of the Department Code of Conduct, or any other course of intentional misconduct indicating that a member has little or no regard for their responsibility as a member of the department. 2nd offense reprimand to dismissal.
>
> Section 1.19 - Assault any member of the department. 1st offense 10-20 days.
>
> Section 5.06 - Flagrant misuse, mishandling or display of firearms. 1st offense reprimand to five days.

(*Id*. at ¶ 220).

On December 22, 2015, the City, through Hughes, issued a letter to Rogers regarding "*Loudermill* Notice: Conduct Unbecoming an Officer And Dereliction of Duty." (*Id*. at Ex. "3"). That letter indicates a meeting was scheduled for December 28, 2015 to discuss the events of December 15, 2015. (*See id*.). The letter further provides:

> [I]t is alleged that on that date you, *inter alia*, were at the Police Department while on-duty with the City and pointed your firearm at or in the direction of another police officer. Your actions may constitute violations of Pennsylvania's Crimes Code, conduct unbecoming an officer, dereliction of duty and violations of the Police Department's rules, regulations and procedures. I am enclosing herewith copies of the reports from Lieutenant Ralph Elick, Officer Joseph Homza and Officer Mark Hilpp regarding this incident.
>
> Please be advised that, if it is determined that you acted improperly in any regard, you may be subject to disciplinary action up to and including termination in accordance with the City's policies and procedures. . . .

3

(*Id*.).

The meeting was held on December 28, 2015. (*See id*. at ¶ 261). Rogers provided a "Response to *Loudermill* Notice" the same day. (*Id*. at Ex. "8"). Therein, Rogers explained that he had difficulties with Lendacky in the past and that she was targeting him and looking to have him fired. (*See id*.). Nevertheless, Rogers acknowledged that this did not justify his conduct, noting that his "impulsive action . . . could have resulted in someone being seriously injured or killed." (*Id*.).

Defendant Anthony George ("George") took office as the City's elected mayor in the first week of January 2016. (*See id*. at ¶ 150). Lendacky was a political ally and supporter of George's mayoral campaign. (*See id*. at ¶ 157). On January 4, 2016, George directed Hughes to accept Elick's report and to refer Roger's conduct to the Luzerne County District Attorney's Office for investigation. (*See id*. at ¶ 228). Two days later, January 6, 2016, George announced that Lendacky would be the new City Chief of Police. (*See id*. at ¶ 230).

Rogers was dismissed from his City employment on January 8, 2016. (*See id*. at ¶¶ 231, 242). Rogers was informed by letter signed by George that his termination was effective immediately. (*See id*. at Ex. "9").

Rogers applied for unemployment compensation benefits two (2) days after he was terminated. (*See id*. at ¶¶ 270). That application was denied. (*See id*. at ¶ 286). Rogers appealed and the Unemployment Compensation referee found Rogers eligible for benefits. (*See id*. at ¶¶ 287, 308). The City appealed and the Unemployment Compensation Board reversed the decision of the referee. (*See id*. at ¶¶ 309-310). Rogers then appealed the Board's decision to the Pennsylvania Commonwealth Court, but Rogers' appeal was denied. (*See id*. at ¶¶ 314, 319-323). Rogers next filed a Petition for Allocatur with the Pennsylvania Supreme Court, (*see id*. at ¶ 326), but that petition was denied. *See Rogers v. Unemployment Comp. Bd. of Review*, 811 MAL 2017 (Pa. May 2, 2018).

Rogers also filed a grievance under the terms of the applicable collective

bargaining agreement after his employment was terminated. (*See* Compl., ¶¶ 328-29). Rogers did not prevail at arbitration. (*See* Doc. 11, Ex. "A").

In addition, Rogers sought workers' compensation benefits after he was discharged by the City. (*See* Compl., ¶¶ 343-344). Rogers' claim for workers' compensation benefits was denied. (*See* Doc. 11, Ex. "B").

After Rogers was terminated, a local newspaper published an article entitled "WB police officer terminated after pointing loaded gun at other at headquarters, says Mayor George." (*See* Compl., Ex. "1"). Although George did not identify the former officer, the newspaper confirmed that Rogers was the officer terminated. (*See id.*). In that article, George is quoted as saying, *inter alia*: "It wasn't just because he drew the gun. It was his fourth discipline in three or four months"; "That was one of my first duties, cause it's law and order - not just on the streets, it's in City Hall and in the police department"; and that the prior administration left Rogers' "termination for me. It's easier - wait three or four weeks and let somebody else do it." (*Id.*).

Based on the foregoing, Rogers commenced the instant action against the City, George, Lendacky, and Elick (collectively, where appropriate, "Defendants") on January 5, 2018. (*See id., generally*). While not entirely clear, the Complaint purports to assert the following twelve (12) "Claim[s] for Relief": (1) violation of the Ex Post Facto Clauses of the United States and Pennsylvania Constitutions; (2) violation of free speech rights under the United States and Pennsylvania Constitutions; (3) violation of free speech/right to report work injury protected by the United States and Pennsylvania Constitutions; (4) Fourteenth Amendment deprivation of property interest; (5) Fourteenth Amendment deprivation of liberty interest; (6) deprivation of equal protection and right to reputation under the United States and Pennsylvania Constitutions; (7) violation of the "Employer Rules of Law and Order" protected by the Pennsylvania Constitution; (8) violation of Pennsylvania's Workers' Compensation Act; (9) violation of the Americans with Disabilities Act; (10) violation of the Family and Medical Leave Act; (11) violation of Pennsylvania's Confidence in

5

Law Enforcement Act; and (12) conspiracy in violation of § 1985(c). (*See id*., *generally*).

On March 20, 2018, Defendants moved to dismiss Rogers' Complaint in its entirety. (*See* Doc. 5, *generally*). Defendants' motion has now been fully briefed and is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

Defendants move for dismissal of the Complaint in its entirety. Defendants' motion, for reasons explained below, will be granted in part and Rogers' claims under federal law will be dismissed with prejudice.

### A. Rule 8.

First and foremost, Rogers' Complaint could be summarily dismissed without prejudice for failure to comply with the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8. Rule 8 provides in part "that any pleading that includes a claim for relief shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1998) (Alito, J) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 further states that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Secs. Litig.*, 90 F.3d at 702 (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 169 (2d ed. 1990)). At bottom, to comply with Rule 8 a complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Frazier v. Southeastern Pa. Transp. Auth.*, 785 F.2d 65, 66 (3d Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Failure to comply with the mandates of Rule 8 may result in dismissal. *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 51 (3d Cir. 2015) (allowing for the dismissal of a *pro se* complaint in violation of Rule 8).

Simply put, Plaintiff's nearly 600 paragraph, 141 page Complaint (without exhibits) is the quintessential shotgun pleading which has been criticized by the Third Circuit. *See Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (criticizing the "all too common shotgun pleading approach" to complaints); *see also* Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) ("The unifying characteristic of . . . shotgun pleadings is that they fail to . . . give the defendants

adequate notice of the claims against them and the grounds upon which each claim rests." (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015))); *Wright v. City of Phila.*, No. 01-6160, 2005 WL 3091883, at *11 (E.D. Pa. Nov. 17, 2005) (citing *Hynson* for the proposition that "[t]he Third Circuit . . . has a policy against Plaintiffs using a 'shotgun pleading approach' . . . and requires civil rights cases [to] be plead[ed] with considerable specificity."). Not only is the Complaint replete with vague and conclusory statements, it also impermissibly contains multiple Counts within each "Claim for Relief." *See Litwak v. Tomko*, No. 16-446, 2018 WL 1378633, at *5-6 (M.D. Pa. Mar. 19, 2018). Most significantly, though, the Complaint is defective because it does not contain "a short and plain statement of the claim." Rule 8(a)(2). Given this, the Complaint could rightfully be dismissed pursuant to Rule 8. *See, e.g.*, Tillio v. *Northland Grp., Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012) ("A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8, but dismissal 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"). Nevertheless, the Complaint will not be dismissed pursuant to Rule 8 and I will consider Defendants' challenges to the sufficiency of the Complaint.

**B. Plaintiff's § 1983 Claims.**

Rogers first brings claims under the United States Constitution pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. The two essential elements of a § 1983 claim are: "'(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Kost v.*

*Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rogers asserts claims under § 1983 for violation of the United States Constitution's Ex Post Facto, Free Speech, Due Process, and Equal Protection Clauses.

### 1. Ex Post Facto Claim.

Rogers' first cause of action is brought pursuant to the United States Constitution's Ex Post Facto Clause. The Ex Post Facto Clause of Article I, Section 10 prohibits "the enactment of any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then described." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001). The clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 504, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995).

Rogers does not present a viable claim under the Ex Post Facto Clause. "The Ex Post Facto Clause has been construed to apply only to retroactive criminal penalties." *Carrier v. Bradley*, No. 10-5044, 2011 WL 13175961, at *10 (S.D.N.Y. Sept. 30, 2011) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 n.19 (1994); *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)). No penal statute or retroactive criminal penalties are at issue in this litigation, so the Ex Post Facto Clause claim will be dismissed.

### 2. Free Speech Claim.

Rogers next asserts that he was terminated from his employment in retaliation for his criticisms of Lendacky in April 2015 and his December 28, 2015 *Loudermill* response. Defendants argue that this claim should be dismissed because Rogers fails to plead that he engaged in any constitutionally protected conduct.

To plead a First Amendment retaliation claim, a public employee must allege that: (1) he engaged in activity that is protected by the First Amendment; and (2) the

protected activity was a substantial factor in the employer's retaliatory action. *See Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). "Speech by government employees is constitutionally protected when the employee is speaking as a citizen, not as an employee, and when the speech involves a matter of public concern." *Bradley v. West Chester Univ. of Pa State Sys. of Higher Educ.*, 880 F.3d 643, 651-52 (3d Cir. 2018) (quotations, citations, and internal alteration omitted). " If these two prerequisites are not met, a public employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* at 652 (quotation and citation omitted). According to Defendants, Rogers did not speak on a matter of public concern when he complained about Lendacky's conduct. I agree.

"Personal grievances cannot constitute speech of public concern." *Fow v. Pawlowski*, No. 12-1970, 2016 WL 7324514, at *7 (M.D. Pa. Dec. 16, 2016) (citing *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994)). And, "'speech that relates solely to mundane employment grievances does not implicate a matter of public concern.'" *Id.* (quoting *Munroe v. Cent. Bucks. Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015)). Indeed, "[w]hile 'in one sense the public may always be interested in how government officers are performing their duties,' that does not transform an employee's issue with his supervisors into a matter of public concern." *Id.* at *8 (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011)). That is because "complaints about personal abuses, versus abuses to the public, suffered at the hands of public employees do not generally rise to the level of public concern." *Damiano v. Scranton Sch. Dist.*, No. 13-2635, 2016 WL 4988396, at *6 (M.D. Pa. Sept. 16, 2016); *see also Desrochers v. City of San Bernardino*, 572 F.3d 703, 713-14 (9th Cir. 2009); *Bell v. City of Philadelphia*, 275 F. App'x 157, 159 (3d Cir. 2008) (finding complaints of personally experiencing alleged gender and race discrimination by supervisors in a public office was not a matter of public concern)

Here, Rogers did not speak on a matter of public concern. In the matter *sub*

*judice*, Rogers complained about Lendacky's management style and reported his fear that she was targeting him. (*See* Compl., Exs. "2", "8"). Rogers' complaints were solely based on his own purported abuses, matters which were purely personal to him. Thus, these complaints are nothing more than the personal grievances of an employee with his supervisor. Such speech does not touch on a matter of public concern. Thus, Rogers fail to state a First Amendment retaliation claim.

Moreover, even if Rogers spoke on a matter of public concern, the Complaint fails to plausibly allege that he was retaliated against for engaging in protected activity. The First Amendment retaliation claim, at its core, is predicated on Rogers' view that he was terminated because of his statements in his December 28, 2015 *Loudermill* response. But this overlooks the salient fact that the City notified Rogers six (6) days before his purportedly protected speech that if his conduct in the bidding room was found "improper[ ] in any regard, you may be subject to disciplinary action up to and including termination in accordance with the City's policies and procedures." (Compl., Ex. "3"). In that regard, he was alleged to have pointed his firearm at or in the direction of other officers while he was on duty. (*See id*.). Significantly, Rogers admitted to raising his firearm in the direction of the other officers in the bidding room. (*See id*. at Ex. "8"). On these facts, it is not plausible that Rogers was terminated for his purported criticisms of Lendacky that post-dated his improper conduct which he admitted and which he had already been informed could serve as the basis for discharge.[1] Rogers' First Amendment retaliation claim will be dismissed.

---

[1] Nor has Rogers demonstrated that he was retaliated against for his statements about Lendacky in or about April 2015. To the contrary, Rogers admitted that he committed all of the disciplinary incidents for which he was cited. Moreover, Rogers' request for a transfer from Lendacky's platoon was ultimately granted in June 2015.

### 3. Due Process Claims.

Rogers also alleges that he was deprived of his due process rights. The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend XIV, § 1. The Due Process Clause has both substantive and procedural components. *Evans v. Sec 'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). While not entirely clear, Rogers appears to set forth three (3) due process claims: (1) substantive due process violation for termination of his employment; (2) procedural due process property interest deprivation; and (3) procedural due process deprivation of liberty interest in reputation.

### a. Substantive Due Process.

The Complaint does not state a viable substantive due process claim. To proceed on a substantive due process claim, the plaintiff must have "a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir.2000). "The text of the Fourteenth Amendment speaks of 'property' without qualification, and it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause." *Id.* But not all property interests protected under the procedural component of the Due Process Clause are protected under the substantive component of the Due Process Clause. *Id.* "[T]o state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest.'" *Id.* (emphasis in original) (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir.1995)). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* The Third Circuit in *Nicholas* held that tenured public employment is not a fundamental property interest protected by the substantive component of the Due Process Clause. *Id.* at 142. Thus,

employment as a police officer is not a property right protected by the substantive Due Process Clause. *See Cinque v. City of Newark*, No. 10-225, 2014 WL 1254148, at *6 (D.N.J. Mar. 26, 2014); *Livingston v. Borough of Edgewood*, No. 08-812, 2008 WL 5101478, at *5-6 (W.D. Pa. Nov. 26, 2008); *Cotner v. Yoxheimer*, No. 07-1566, 2008 WL 2680872, at *8 (M.D. Pa. July 2, 2008); *Smith v. Twp. Of E. Greenwich*, 519 F. Supp. 2d 493, 503 (D.N.J. 2007). The substantive due process claim will be dismissed.

### b.    Procedural Due Process.

Rogers also appears to assert procedural due process claims for the purported deprivations of a property interest in his employment and his liberty interest in reputation. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

### i.    Property Interest.

"Whether a person has a legitimate entitlement to - and hence a property interest in - his government job is a question answered by state law." *Hill*, 455 F.3d at 234. "A plaintiff claiming a due process violation while relying upon state law to establish his property right, looks to federal law to define procedural due process." *Perri v. Aytch*, 724 F.2d 362, 366 (3d Cir. 1983) (quotation and citation omitted).

With respect to Rogers' deprivation of property interest claim, Defendants argue only that the Complaint fails to contain any facts that the procedures afforded to him did not provide due process of law. As to this prong of Rogers' property interest claim, "'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930, 117

S. Ct. 1807, 138 L. Ed. 2d 120 (1997)).   At a minimum, a deprivation must "be preceded by notice and an opportunity for a hearing."   *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

> Prior to termination, *Loudermill* requires "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987) (quoting *Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487).   The pretermination hearing, "though necessary, need not be elaborate," and it must at least entail: 1) "oral or written notice of the charges," 2) "an explanation of the employer's evidence," and 3) "an opportunity for the employee to tell his side of the story." *Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487.

*Moffitt v. Tunkhannock Area Sch. Dist.*, 160 F. Supp. 3d 786, 793 (M.D. Pa. 2016).

Rogers argues that the procedures he was provided did not comport with the requirements of due process because: (1) six (6) days did not constitute sufficient notice to prepare himself for the December 28, 2015 meeting; and (2) George was a biased decision-maker.   Neither argument is availing.

First, Rogers received adequate and timely notice of the charges and evidence against him.   "Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case." *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986).   The content of the notice here was clearly sufficient: Rogers was informed of the charges against him and he was provided with Elick's report and the written statements from Homza and Hilpp.   (*See* Compl., Ex. "3").   The notice was also timely.   The Third Circuit has held that "[l]ack of advance notice, however, does not constitute a *per se* violation of due process." *Gniotek*, 808 F.2d at 244.   In fact, " in the employee termination context, notice served at the predeprivation hearing satisfies the demands of due process." *Id*.   In other words, "advance notice is not required." *Id*.; *see also Moffitt*, 160 F. Supp. 3d at 794.   Accordingly, Rogers' deprivation of property interest claim based on the insufficiency of the notice prior to the pre-termination meeting fails. *See*, *e.g.*, *Winter v. Pennsylvania State Univ.*, 172 F. Supp.

3d 756, 768 (M.D. Pa. 2016); *see also Parker v. Farley*, 625 F. App'x 77, 81 (3d Cir. 2015) ("Therefore, he had seven days notice of the charges against him and their potential consequences, which constitutes adequate notice both under the greater protections of his collective bargaining agreement and as required by law."); *Wallace v. Tilley*, 41 F.3d 296, 300-01 (7th Cir. 1994) (notice six (6) days before hearing comported with requirements of due process).

Second, Rogers fails to state a violation of his due process rights based on George's purported bias against him. For one, Rogers' claim of bias is pure speculation. Rogers does not provide any facts - other than George's relationship with Lendacky - to support a finding of bias. Moreover, "in the case of an employment termination case, due process does not require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obliged only to make available the means by which the employee can receive redress for the deprivations." *McDaniels v. Flick*, 59 F.3d 446, 459 (3d Cir. 1995) (quotation, citations, and alterations omitted); *see also Heneghan v. Northampton Cmty. Coll.*, 493 F. App'x 257, 259-260 (3d Cir. 2012) ("Generally, due process does not require an impartial decisionmaker at the pretermination hearing provided the state affords a neutral tribunal at the post-termination stage."). Thus, even accepting Rogers' conclusory allegations of George's bias as true, "[d]ue process does not require a neutral, impartial decision-maker during the pre-termination hearing, provided the terminated employee has adequate post-termination proceedings before an impartial decision-maker." *Deluzio v. Monroe Cnty.*, No. 00-1220, 2006 WL 3098033, at *16 (M.D. Pa. Oct. 30, 2006) (citing *McDaniels*, 59 F.3d at 460). Here, Rogers does not allege that he was denied adequate post-termination proceedings before an impartial tribunal. Accordingly, he fails to state a claim on this ground. *See, e.g.*, *Barnett v. Penn Hills Sch. Dist.*, No. 16-274, 2016 WL 2895136, at *7-8 (W.D. Pa. May 18,

2016).[2]  The procedural due process property interest claim will be dismissed.

## ii.  Liberty Interest.

Rogers also claims that Defendants deprived him of his liberty interest in reputation.  The Due Process Clause of the Fourteenth Amendment protects a liberty interest in reputation only when the plaintiff shows a "stigma" to reputation "plus deprivation of some additional right or interest."  *Hill*, 455 F.3d at 236; *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008).  To satisfy the "stigma" prong, Rogers must allege that Defendants made a false, stigmatizing statement and that the stigmatizing statement was made publicly.  *See Hill*, 455 F.3d at 236 (citations omitted); *Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (explaining that to establish the "stigma" prong, the employee must show "1) publication of 2) a substantially and materially false statement that (3) infringed upon the reputation, honor, or integrity of the employee").  To satisfy the "plus" prong, the Third Circuit has held that alleging a property interest is sufficient.  *Dee*, 549 F.3d at 234; *see also Hill*, 455 F.3d at 236 (explaining that in the public employment context, "the creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus'").  Defendants argue that the Complaint is devoid of facts satisfying the "stigma" prong of this claim.

Rogers' liberty interest in reputation claim will be dismissed for two reasons.  First, Rogers did not respond to Defendants' contentions regarding the deficiencies of the stigma-plus claim.  Accordingly, this portion of Defendants' motion to dismiss

---

[2]  Rogers also suggests that he did not receive adequate pre-termination procedures because the December 22, 2015 *Loudermill* notice indicated that a meeting - not a hearing - would be held on December 28, 2015.  That the December 28, 2015 proceeding was referred to as a meeting in the *Loudermill* notice letter does not establish a due process violation.  *See, e.g., Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 193-94 (3d Cir. 1993); *see also Schleck v. Ramsey Cnty.*, 939 F.2d 638, 641 (8th Cir. 1991) ("It does not have to be a formal hearing; informal meetings with supervisors are sufficient.").

is unopposed and the claim is subject to dismissal on this ground. *See* M.D. Pa. L.R. 7.6; *see also Tambasco v. United States Dep't of Army*, No. 17-1857, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018); *Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344635, at *4 (M.D. Pa. Apr. 8, 2011) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada v. Delaware Cnty. Cmty. Coll.*, No. 08-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Mussari v. Jermyn Borough*, No. 07-948, 2007 WL 3231800, at *2 (M.D. Pa. Oct. 31, 2007).

Second, although Rogers relies on statements by George in a local newspaper article in support of this claim, he does not identify any comments in that article that were actually false. By failing to do so, Rogers does not present a viable stigma-plus claim. *See*, *e.g.*, *McCarthy v. Darman*, 372 F. App'x 346, 351 (3d Cir. 2010) ("these statements do not show a stigma because they were not false. Indeed, McCarthy was suspended and the Borough Defendants were engaged in an on-going investigation. Therefore, McCarthy was not deprived of a liberty interest without due process of the law."). In addition, George's comments implicate only Rogers' competence and job performance. (*See* Compl., Ex. "1"). Courts within this Circuit "have consistently found that 'no liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" *Carroll v. Lackawanna Cnty.*, No. 12-2308, 2015 WL 5512703, at *9 (M.D. Pa. Sept. 16, 2015) (citing *Fox v. Cheltenham Twp. Auth.*, No. 12-716, 2012 WL 2273424, at *4 (E.D. Pa. June 18, 2012); *Young v. Kisenwether*, 902 F. Supp. 2d 548, 558 (M.D. Pa. 2012); *Chinoy v. Pa. State Univ.*, No. 11-1263, 2012 WL 727965, at *4-5 (M.D. Pa. Mar. 6, 2012) (dismissing a due process claim because alleged statements regarding professional competence are insufficient to satisfy the "stigma" part of the "stigma-plus" analysis); *Kohn v. Sch. Dist. of*

*Harrisburg*, 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011); *Poteat v. Harrisburg Sch. Dist.*, 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999)). For this reason as well, Rogers' stigma-plus claim will be dismissed.

### 4. Equal Protection Claim.

Rogers further contends that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment, which directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A claim under the Equal Protection Clause requires an allegation that the plaintiff "is receiving different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980); *S.K. v. North Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 809 (W.D. Pa. 2016) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.").

Rogers' equal protection claim will be dismissed. For one, Rogers did not respond to Defendants' arguments supporting dismissal of this claim, so it is properly dismissed as unopposed. *See* M.D. Pa. L.R. 7.6; *Tambasco*, 2018 WL 1203466, at *2; *Sikkelee*, 2011 WL 1344635, at *4; *Lada*, 2009 WL 3217183, at *10; *Mussari*, 2007 WL 3231800, at *2. Further, the claim fails because Rogers does not allege that he is a member of a protected class. *See*, *e.g.*, *Scavone v. Pennsylvania State Police*, No. 09-1623, 2011 WL 6100621, at *4 (M.D. Pa. Dec.7, 2011) (finding plaintiff failed to show equal protection claim when he failed to allege the protected class of which he was a member), *aff'd*, 501 F. App'x 179 (3d Cir. 2012). Finally, to the extent Rogers is attempting to assert an equal protection claim under a "class of one" theory, that claim necessarily fails because the Supreme Court has explicitly held that this "theory of equal protection has no application in the public employment context." *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 607, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); *Conrad v. Pennsylvania State Police*, 360 F. App'x 337, 339 (3d Cir. 2010).

## C.    Plaintiff's § 1985(3) Claim.

Rogers also asserts that Defendants engaged in a conspiracy in violation of 42 U.S.C. § 1985(3).  "Section 1985(3) provides a cause of action if: (1) two or more persons conspire to deprive any person of the equal protection of the law; (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989)).

The § 1985(3) will be dismissed.  Section 1985(3) requires a claimant to "allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions' in order to state a § 1985(3) claim." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)).  The Complaint is devoid of facts suggesting that Defendants acted with any racial or other class-based animus. As such, Rogers does not state a *prima facie* claim under § 1985(3).  *See, e.g.*, *Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125-26 (3d Cir. 2017) (affirming dismissal of § 1985(3) claim where the plaintiff "wholly failed to allege that defendants' actions were motivated by any racial or invidious class-based discriminatory animus.").

## D.    Plaintiff's ADA Claim.

Next, Rogers contends that Defendants terminated him in violation of the Americans with Disabilities Act  ("ADA"), 42 U.S.C. § 12101 *et seq*.  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A plaintiff alleging

19

discrimination under the ADA must exhaust his or her administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Rogers fails to state an ADA claim. The Complaint does not contain any averments that his ADA claim was administratively exhausted with the EEOC, a fact which Rogers appears to concede in his brief in opposition to the motion to dismiss. (*See* Doc. 16, 38). Instead, Rogers argues that the exhaustion requirement should be excused on the facts of this case, but he provides no exceptional circumstances to warrant waiver of this requirement. *See, e.g., Bullington v. Bedford Cnty.*, No. 16-302, 2017 WL 4553428, at *3 (E.D. Tenn. May 12, 2017). The ADA claim will be dismissed.

### E.   Plaintiff's FMLA Claim.

In his final federal law cause of action, Rogers claims that Defendants violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. To state an FMLA interference claim, Plaintiff must allege that: "(1) [he] was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of [his] intention to take FMLA leave; and (5) the plaintiff was denied benefits to which [he] was entitled under the FMLA." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)).

Rogers fails to state an FMLA interference claim. "To invoke [his] rights under the FMLA, an employee must provide [his] employer with adequate notice of the need to take leave." *Sylvester v. DGMB Casino, LLC*, No. 15-8328, 2017 WL 3894964, at *11 (D.N.J. Sept. 6, 2017) (citing 29 U.S.C. § 2612(e)). "'In doing so, the employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.* (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir.

2012)).  But, "'[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA . . . .'" *Id*. (quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007)).  Here, Rogers does not allege that he invoked any rights under the FMLA or that he gave notice to Defendants of his intention to take FMLA leave, so he fails to state such a claim.  *See*, *e.g.*, *id.*; *see also Johnson v. Thru Point, Inc.*, 160 F. App'x 159, 162 (3d Cir. 2005) ("Johnson did not tell ThruPoint of his PTSD or even provide ThruPoint with an opportunity to discover it.  He did not take or request a leave of absence, vacation, or sick leave.  Instead, he signaled to ThruPoint his eagerness to work.  Nothing in the record suggests that ThruPoint was or should have been on notice of Johnson's need for health-related leave."); *Jacobs v. York Union Rescue Mission, Inc.*, No. 12-288, 2013 WL 433327, at *4 (M.D. Pa. Feb. 5, 2013) (dismissing FMLA claim where the plaintiff failed "to set forth any facts or allegations regarding the substance and form of [the] notice").[3]

## F.      Leave to Amend the Federal Law Claims.

Rogers requests the opportunity to file an amended pleading if the Complaint is found defective in any respect.  (*See* Doc. 16, 39).  Ordinarily, if a civil rights complaint is subject to dismissal under Rule 12(b)(6), the Court must permit a curative amendment.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, leave to amend need not be granted if doing so would be futile. *Id*.  Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

Rogers will not be granted the opportunity to amend because the futility of

---

[3]      Rogers in his brief seemingly concedes that he never provided notice to the City of any medical issue or a need for leave.  (*See* Doc. 16, 37 ("Of course[ ] he did not present medical evidence . . . .")).

amendment is apparent. Rogers' theory of Defendants' liability is set forth at length in his 141 page Complaint. But, as stated above, Rogers does not present any viable federal causes of action. And, given the circumstances of this case and the facts upon which Defendants' liability is purportedly based, Rogers does not have viable ex post facto, free speech, equal protection, due process, ADA, and/or FMLA claims. Leave to amend would thus be futile because an amended complaint would not survive a motion to dismiss. Rogers' federal law claims will therefore be dismissed with prejudice.

## G.     State Law Claims.

In addition to Rogers' federal law causes of action, he also asserts a number of claims under the Pennsylvania Constitution and various Pennsylvania statutes. Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may refuse to exercise such jurisdiction where, as in the instant case, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

Here, there is no affirmative justification for exercising supplemental jurisdiction over Rogers' state law claims beyond any ordinary inconvenience associated with dismissal on this ground. Therefore, as the claims forming the basis of jurisdiction over this action will be dismissed, supplement jurisdiction over the remaining state law claims will be declined. The state law claims will be dismissed without prejudice to allow Rogers to re-file them in state court if he so desires.

## IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part. Rogers' claims under federal law will be dismissed with prejudice while his state law claims will be dismissed without prejudice.

An appropriate order follows.


July 9, 2018                                    /s/ A. Richard Caputo
Date                                            A. Richard Caputo
                                                United States District Judge